920 P.2d 312

**STATE of Arizona, Appellee,**

v.

**Wallace Thomas KORZUCH, Appellant.**

**STATE of Arizona, Appellee,**

v.

**Wallace Thomas KORZUCH, Appellant.**

**Nos. CR–95–0477–PR, CR–96–0087–PR.**

Supreme Court of Arizona,
En Banc.

July 11, 1996.

---

keep his company afloat, defendant obtained loans from Century Bank. In part, these loans were secured by accounts receivable which did not exist. When the loans failed to save the company, defendant told the bank the receivables were fictitious.

Defendant pled guilty to theft. The superior court placed him on probation for five years and ordered, among other conditions, the payment of $600,000 in restitution to Century Bank in $500 monthly payments.

Defendant found employment in Pennsylvania and was accepted for probation supervision there. His wife did not accompany him to Pennsylvania; she resided in California. By October 1990, defendant had obtained employment in California so that he could spend time with his wife, and his probation supervision was transferred there. In October 1990, the superior court modified the terms of defendant's probation by increasing the monthly payment from $500 to $800, a modification which is not at issue in these appeals.

On May 11, 1993, less than a month before the expiration of the five-year probationary term, a probation officer prepared and filed with the trial court an ex parte petition to modify. The trial judge signed the proposed order by which defendant's probation was purportedly "extended for a period of three years from June 7, 1993 pursuant to A.R.S. 13–902(B)" for the reason that restitution was not complete. This modification also ordered the defendant to make a balloon payment of over $53,000 at the termination of his new, extended probationary period.

It is undisputed that the state never attempted to give defendant or his counsel notice of the filing of the petition to modify or of the court's order granting the modification until after the state advised defendant he was in violation of the modification. On the contrary, defendant's California probation officer told defendant in June 1993, "that his case was terminated and supervision would no longer be required." Testimony at defendant's violation hearing established that it is the common practice of the Maricopa County Probation Department not to give

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Monica D. Beerling, Former Assistant Attorney General, Linda L. Knowles, Assistant Attorney General, Phoenix, for Appellee.

Burch & Cracchiolo, P.A. by Daniel Cracchiolo, Daryl D. Manhart, David G. Derickson, Phoenix, for Appellant.

## OPINION

MOELLER, Justice.

## FACTS AND PROCEDURAL HISTORY

About ten years ago, defendant's business experienced financial setbacks. In order to

notice of extensions to most out-of-county probationers.

Defendant stopped making restitution payments at the conclusion of his original five-year probationary period in July of 1993. In September 1993, defendant received a letter from a Maricopa County probation officer informing him that he was delinquent in his payments. After learning of the ex parte extension and modification, defendant filed a motion to vacate the modification order, contending that his due process rights were violated by reason of the lack of notice. The superior court denied the motion on the theory that the extension was appropriate because restitution remained unpaid. Defendant appealed that denial to the court of appeals (Appeal No. 1).

While Appeal No. 1 was pending, defendant, on advice of counsel, suspended restitution payments, believing his obligation to make the payments was stayed pending appeal under Rule 31.6, Ariz. R.Crim. P. The state then filed a petition to revoke defendant's probation. The trial court held that the Rule 31.6 provision staying restitution pending appeal applies only to appeals from original convictions, not from later revocation proceedings. The trial court then found defendant in violation of the conditions of his extended probation. At the disposition hearing, the court reinstated defendant's probation for a period of three years beginning July 1, 1994, with monthly restitution payments of $1000. Defendant appealed this order (Appeal No. 2). The trial court again denied defendant's motion to stay restitution payments pending appeal.

Defendant unsuccessfully asked the court of appeals to consolidate the two appeals. As to Appeal No. 1, the court of appeals, by memorandum decision, held that, although defendant should have received notice of the extension, the error was cured in "the October 1994 hearing, where the matter was reopened and Korzuch had an opportunity to address the probation modification." *State v. Korzuch,* 1 CA–CR 94–0200, pg. 6 (memo. dec. July 25, 1995). In Appeal No. 2, the court of appeals affirmed the trial court's order finding defendant in violation and reinstating him to probation for another extended term with increased monthly payments.

We granted defendant's petitions for review in both appeals and consolidated the cases in this court. We have jurisdiction pursuant to Ariz. Const. art. VI, § 5(3). *See* Ariz. R.Crim. P. 31.19, and A.R.S. § 12–120.24. We hold the court of appeals erred in Appeal No. 1 by concluding that the October hearing corrected the lack of notice. Accordingly, the other issues raised in Appeal No. 2 are moot because there was no valid probationary order extant to support a finding of violation.

## DISCUSSION

■ A trial court may extend probation if required restitution has not been paid. *See* A.R.S. § 13–902(B).[1] For a felony, such as the one involved in this case, the extension may be for up to three years. *Id.* § 13–902(B) does not explicitly require notice to the probationer. The question in this case is whether an extension and modification without any attempted notice to the probationer or his counsel violates the probationer's rights. This is a purely legal issue and we review it under a *de novo* standard of review. *See Tallent v. National Gen. Ins. Co.,* 185 Ariz. 266, 915 P.2d 665 (1996); *see also Matter of U.S. Currency Amt. of $315,900.00,* 183 Ariz. 208, 211, 902 P.2d 351, 354 (App.1995) (holding constitutional questions and questions of interpretation and application of statutes reviewed *de novo* ).

■ Defendant asserts due process rights under both the federal and state constitutions. *See* U.S. Const. amend. XIV § 1; Ariz. Const. art. II, § 4. The United States Supreme Court has held that the right/privilege distinction is not an adequate touchstone to use in deciding when federal due process is required. *See Morrissey v. Brewer,* 408 U.S. 471, 481–82, 92 S.Ct. 2593, 2600–01, 33 L.Ed.2d 484 (1972). Thus, although a prisoner has no right to parole, the Fourteenth

---

1. We refer to the version of the statute applicable when defendant committed his offense. The current version is found at A.R.S. § 13–902(C).

Amendment guarantee of due process protects a parolee from revocation of parole without notice and a hearing. *Id.* at 484–490, 92 S.Ct. at 2602–05. Since *Morrissey,* the Court has also held that the same due process concerns are implicated by the revocation of a probationary term. *Gagnon v. Scarpelli,* 411 U.S. 778, 781–82, 93 S.Ct. 1756, 1759–60, 36 L.Ed.2d 656 (1973). *Morrissey* and *Gagnon* are grounded upon the notion that a court may deny a parolee or a probationer his freedom without the same procedural guarantees as those afforded to non-parolees or non-probationers, but that due process affords some procedural protections even to those with reduced liberty interests.

This case differs somewhat from *Gagnon* and *Morrissey.* Here the extension and modification itself does not deprive defendant of his freedom, although, admittedly, a violation of the extension and modification could result in a loss of freedom. Defendant asserts that both federal and state due process entitle him to notice and a hearing before his term of probation is extended or modified. On the federal side, this issue has not yet been addressed by the Supreme Court, but has been answered in the negative by the circuit courts which have considered it. *See Forgues v. United States,* 636 F.2d 1125, 1126–27 (6th Cir.1980) (finding no constitutional violation in the ex parte extension of probation but requiring notice and right to hearing under court's supervisory power); *United States v. Cornwell,* 625 F.2d 686, 687–89 (5th Cir.) *cert. denied,* 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 610 (1980) (same); *Skipworth v. United States,* 508 F.2d 598, 601–03 (3rd Cir.1975) (same); *United States v. Carey,* 565 F.2d 545, 546–47 (8th Cir.1977) *cert. denied,* 435 U.S. 953, 98 S.Ct. 1582, 55 L.Ed.2d 803 (1978) (finding no constitutional violation in ex parte extension of probation and declining to invoke supervisory power although notice and hearing are "preferable"). We believe it noteworthy that three of the four federal decisions addressing the issue have required, pursuant to the courts' supervisory power, notice and a hearing prior to extension.

Because Arizona case law differs from the federal case law, we reach a conclusion contrary to the circuit courts, both as to federal and state law. In Arizona, due process has been defined so as to require notice and a hearing if the terms of probation are modified. *Nieuwenhuis v. Kelly,* 164 Ariz. 603, 606, 795 P.2d 823, 826 (App.1990); *see also Green v. Superior Court,* 132 Ariz. 468, 471, 647 P.2d 166, 169 (1982) ("[T]he discretionary power given the sentencing court to impose, modify, or revoke probation is limited by several statutory provisions, as well as constitutional due process considerations.") (footnote omitted). An extension of a probationary term is unquestionably a modification of the term. By extending the term, the court subjects the probationer to an additional period during which his liberty is restricted. While the term continues, probation may be revoked and imprisonment imposed without the procedural guarantees provided to non-probationers.

In relying in part upon *Nieuwenhuis* and *Green,* we are aware that the dissent reflects a view of those cases contrary to ours. The dissent takes issue with *Nieuwenhuis* ' statement that there must be a finding of violation before there can be a modification, and we agree with the dissent on that point. However, our mutual disagreement with that aspect of *Nieuwenhuis* does not in any way affect the conclusion in *Nieuwenhuis* that due process requires notice prior to modification. We accept the plain language of *Nieuwenhuis,* while the dissent seeks to diminish its authority by labeling it as involving only "generic" due process. Dissent at 197, 920 P.2d 319. Similarly, the dissent seeks to minimize *Green* by asserting that its only mention of due process is "[i]n a passing footnote." Dissent at 197, 920 P.2d at 319. In our opinion, the dissent's characterization of *Green* as "a statutory case" does not make it such, nor does it eliminate *Green* 's clear reliance in the body of the opinion on "constitutional due process considerations." *See Green* at 132 Ariz. at 471, 647 P.2d at 169.

Because Arizona cases interpreting the Fourteenth Amendment hold that modifications require notice and a hearing, and because an extension is a modification, it follows that an extension requires notice to the probationer that his term will be extended. We therefore decline to follow the federal

cases which have reached a different result. On the facts of this case, we hold defendant was denied federal due process when his probation was extended and modified without notice.[2]

Having reached the conclusion that federal due process required notice under the facts of this case, it necessarily follows that state due process, which can provide no less protection, also requires notice. *See Harper v. Virginia Dept. of Taxation,* 509 U.S. 86, 102, 113 S.Ct. 2510, 2520, 125 L.Ed.2d 74 (1993), ("[s]tate law may provide relief beyond the demands of federal due process, but under no circumstances may it confine petitioners to a lesser remedy.") (citations omitted). Indeed, we expressly hold on independent state due process grounds, under Ariz. Const. art. II, § 4, that under the facts of this case defendant was denied state due process. *See Michigan v. Long,* 463 U.S. 1032, 1040–42, 103 S. Ct. 3469, 3476–77, 77 L.Ed.2d 1201 (1983) (holding Supreme Court will not find adequate and independent state constitutional grounds if the state court relies primarily on federal law and if such grounds are not clear from opinion itself).

■ Even without the constitutional bases, we believe Arizona cases and court rules support the requirement of notice. Although not directly applicable, we find the cases concerning probation revocation to be highly instructive. Rule 27.7(c)(2), Ariz. R.Crim. P., forbids the revocation of probation "for violation of a condition or regulation of which the probationer has not received a written copy." Similarly, the comment to Rule 27.2 indicates that an oral modification "cannot serve as a basis for revoking probation" unless "it is reduced to writing and given to the probationer." Appellate courts of this state have made clear that the requirements of Rule 27.7(c)(2) prevent revocation of probation for failure to comply with an oral order: "[I]f an order is important enough to warrant a revocation petition, the order first must be reduced to writing and given to probationer, as is clearly contemplated by Rule 27.7(c)(2)."

*State v. Robinson,* 177 Ariz. 543, 546, 869 P.2d 1196, 1199 (1994); *see also State v. Jones,* 163 Ariz. 498, 499, 788 P.2d 1249, 1250 (1990) ("Probation cannot be revoked for violation of a condition or regulation of which the probationer has not received a written copy.").

The reasoning of these cases applies powerfully here. *Robinson* and *Jones* (as well as Rule 27.7(c)(2)), indicate that a probationer should not be held to answer for terms of which he has not been notified in writing. If the probationer is entitled to written notice of the terms of his probation, then the probationer must also receive written notice if his probation is extended, because the extension is equivalent to a reinstatement of all of the terms of probation for an additional period.

An *ex parte* extension imposes obligations upon the probationer of which the probationer is completely unaware. Such an extension raises the same concern as that addressed in Rule 27.7(c)(2); that probationers might be held to answer to the orders of a probation officer without receiving written notice of just what these orders entail. This case provides a perfect illustration. Defendant's California probation officer informed him that his five-year term was complete, yet months later he received a letter informing him that he was in violation of his probation. If defendant must be informed of each single term of his probation, it seems especially important that defendant be informed that all the terms will be extended for a period of years.

■ We turn now to the court of appeals' conclusion that the lack of notice was cured "at the October 1994 hearing, where the matter was re-opened and Korzuch had an opportunity to address the probation modification." *State v. Korzuch,* 1 CA–CR 94–0200, pg. 6 (memo. dec. July 25, 1995). We disagree with this conclusion. The October hearing to which the memo decision refers did not at any point "re-open" the issue of the extension. In that hearing, the court

---

**2.** We have no occasion today to consider what circumstances, if any, might excuse lack of actual notice. Here, there was not even an attempt at notice although defendant was under active probation supervision and could easily have been given notice. In fact, the probation department contacted defendant at his home to inform him he had violated the extension.

assessed neither the necessity nor the validity of the extension.

The judge himself described the October hearing as "the disposition hearing." A disposition hearing is a hearing in which the court decides how it will address a violation of probation. Rule 27.7(c), Ariz. R.Crim. P. Thus, the October hearing was two steps removed from the extension, because the hearing was premised on the notion not only that the probationary term had been properly extended, but that defendant had violated the terms of that extension.

Even at the September proceeding regarding the petition to revoke (the Rule 27.7 "violation hearing"), defendant did not have an opportunity to question the decision to extend his probation. The transcript of that proceeding makes clear that the hearing addressed whether or not defendant's extended probation had been violated. Counsel for the state provided ample proof of this point when he stated at the September hearing that "[t]he argument over whether or not that is a valid extension of probation has already been resolved." This statement referred to the trial court's earlier refusal to set aside the extension, which was then the subject of Appeal No. 1.

If the September hearing assumed the validity of the extension, and it did, then the same is doubly true of the October hearing, which was simply a disposition hearing to determine what to do about the already-found violation. When the judge opened the October hearing, he stated that "[a]s I recall, we were talking about the possibility of mitigation/aggravation." He went on to state that "[b]ased on the prior finding by the court, it is the judgment of the court that the defendant has violated the terms and conditions of probation...." The October hearing did not cure the lack of notice.

### THE DISSENT

 The dissent's reading of Arizona case law differs from ours. Perhaps for this reason, the dissent would decide this case on non-constitutional grounds although no such grounds were raised or argued by either party. In general, we agree with the dissent

that we should resolve cases on non-constitutional grounds in all cases where it is possible and prudent to do so. This is not such a case. At no point in the court of appeals or in this court has the defense raised any issue except the constitutional one. Nor has the prosecution suggested, presented, or briefed any possible alternative resolution. In *Korzuch I,* the court of appeals expressly held that defendant's due process rights were violated by the lack of notice but went on to conclude that the due process violation was cured by later proceedings. In short, this has been a due process case from beginning to end.

As our opinion notes, preexisting Arizona case law clearly presaged, if not explicitly required, notice as a due process requirement. Thus, there is no occasion to avoid the constitutional issue or to delay a clear statement concerning it. The fact that our state case law is at odds with federal case law is, in our view, all the more reason to face squarely the constitutional issue.

We have considered the dissent's view that we are wrong to reach the issue, that we are wrong on the merits of the issue, and that the court's process for handling cases on petitions for review is flawed. Having considered these views, we adhere to the views expressed in this opinion.

### CONCLUSION

This court recognizes the salutary effects of restitution and the statutory authority to have limited extensions of probation to enable crime victims to recover as much restitution as possible. However, such extensions must be accompanied by due process. In this case, there was neither notice nor any attempt at notice. Under the facts of this case, the extension of defendant's probation was invalid according to the due process guarantees of both the United States and Arizona constitutions. Therefore, we vacate the extension and modification order of May 11, 1993, and the later findings and orders based on it, including the disposition order of October 24, 1994.

FELDMAN, C.J., and ZLAKET, V.C.J., concur.

JONES and CORCORAN (Retired), JJ., did not participate in the determination of this matter.

MARTONE, Justice, dissenting from the opinion, concurring in the judgment.

The court decides a federal and state constitutional issue even though this case can be resolved under a statute and rule. It decides the federal constitutional issue directly contrary to its resolution in each of the United States courts of appeals that has addressed it, including the Ninth Circuit. It immunizes its decision from federal judicial review by relying upon the state constitution and labeling it an independent basis for its decision. For these reasons, I dissent from the court's opinion. Because the statute and the rule, which the court chooses not to address, support the court's judgment, I join in it on that basis.

### I.

This case illustrates how we can err when we decide a case without briefs or oral argument. The defendant filed a ten-page opening brief in the court of appeals. The state filed a one-sentence opposition to the petition for review. The court granted review without oral argument and without additional briefs. Neither party requested oral argument or the opportunity to file supplemental briefs under Rule 31.19(f), Ariz. R.Crim. P. I believe that had this case been briefed and argued in this court, we would have discovered that it could have been decided on a statute and rule that squarely address the issue, without venturing into the uncertain world of constitutional adjudication. That the defendant did not raise the nonconstitutional issue is not reason enough to decide the constitutional issue. Were it otherwise, we would leave it to the parties to determine whether, and under what limitations, we would decide constitutional issues. As we said and did in *Petolicchio v. Santa Cruz County Fair*, 177 Ariz. 256, 259, 866 P.2d 1342, 1345 (1994),

Although we granted review on the statute's constitutionality, after analyzing the facts and relevant statutes, we find the constitutional issue secondary. Arizona's

courts do not reach constitutional issues if proper construction of a statute makes it unnecessary in determining the merits of the action.

We should follow the traditional practice "of refusing to decide constitutional questions when the record discloses other grounds of decision, whether or not they have been properly raised before us by the parties." *W.W. Neese v. Southern Ry. Co.*, 350 U.S. 77, 78, 76 S.Ct. 131, 132, 100 L.Ed. 60 (1955). We should decide the "case on nonconstitutional grounds even though the petition for [review] presented only a constitutional question." *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 38, 114 S.Ct. 425, 428, 126 L.Ed.2d 396 (1993).

In our constitutional framework, these prudential considerations are far more important to the orderly administration of justice than the substantive issue raised in this case. Judicial self-restraint plays an important role in preserving and protecting an independent judiciary, the delicate balance of power among the branches of government, and public respect for legal institutions.

### II.

By statute and rule, notice and an opportunity to be heard is required before the period of probation can be extended to accommodate unpaid restitution. A.R.S. § 13–804(I), now § 13–804(K), provides in relevant part:

Before modifying the order pertaining to the manner in which the restitution is paid, the court shall give notice and an opportunity to be heard to the defendant, the state and, upon request, persons entitled to restitution pursuant to a court order.

This case comes squarely within the terms of this statute. Korzuch was thus entitled to notice and an opportunity to be heard whether or not the constitution also required it.

Our rules are consistent with the statutory notice provision. Rule 27.2, Ariz. R.Crim. P., provides that the court may modify any condition or regulation of probation "after notice has been provided to the prosecutor and the defendant of proceedings in which the victim has the right to notice pursuant to Rule

27.10." Under Rule 27.10, a victim has the right to notice and hearing whenever a probation modification request "affects restitution." Rule 27.2 also provides that persons entitled to restitution may ask the court at any time prior to discharge to modify the manner in which restitution is paid and "[t]he sentencing court may, where appropriate, hold a hearing on any such request." Rule 27.2, like A.R.S. § 13–804(I), now § 13–804(K), requires notice and an opportunity to be heard before the modification of any order that affects restitution. This includes extending the period of probation solely to facilitate the payment of restitution.

## III.

In light of our statute and rule, it is plain that the resolution of the constitutional claim is unnecessary to our decision. But if it were otherwise appropriate to reach the constitutional issue, I believe the court's analysis is flawed. The court properly notes that the federal courts of appeals have uniformly rejected the claim that due process requires notice and an opportunity to be heard before a probation period is extended. *Ante,* at 193, 920 P.2d at 315. Indeed, the United States Court of Appeals for the Ninth Circuit just held that "due process does not require the district court to hold a hearing as to an extension of probation." *United States v. Silver,* 83 F.3d 289, 292 (9th Cir.1996).

The court says it reaches a contrary conclusion "[b]ecause Arizona case law differs from the federal case law." But this is not the case. The court cites *Nieuwenhuis v. Kelly,* 164 Ariz. 603, 795 P.2d 823 (App.1990) and *Green v. Super. Ct.,* 132 Ariz. 468, 647 P.2d 166 (1982). Neither of these cases has anything to do with the issue before us— whether a probationer must be given notice and an opportunity to be heard before probation is extended. *Green,* among other things, recognized "the power of a sentencing court to modify probation for reasons that may not otherwise warrant revocation of probation." 132 Ariz. at 470, 647 P.2d at 168. *Green* is a statutory case. In a passing footnote, the court cited *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), but for the proposition that the power of a court to "revoke probation" is limited by "constitutional due process considerations." *Id.* at 471 n. 5, 647 P.2d at 169 n. 5. *Gagnon,* of course, relates to probation revocation, not probation extension, and *Green* does not suggest otherwise.

*Nieuwenhuis* erroneously relied upon *Green* for the proposition that "before a modification can impose a greater burden upon a probationer, there must be a finding that the individual violated the terms of probation." 164 Ariz. at 606, 795 P.2d at 826. But as noted, *Green* acknowledged exactly the opposite. *Nieuwenhuis* is simply wrong and is directly contrary to not only *Green,* but the express terms of A.R.S. § 13–901 and Rule 27.2, Ariz. R.Crim. P., both of which permit modification of the conditions of probation without requiring the violation of existing conditions. *Nieuwenhuis* did conclude that generic due process requires notice and an opportunity to be heard "on any material modification of the terms of probation." *Id.* It relied on an earlier opinion of the court of appeals, *Burton v. Super. Ct.,* 27 Ariz.App. 797, 558 P.2d 992 (1977), the validity of which the court of appeals itself has now drawn into question. *State v. Contreras,* 180 Ariz. 450, 453, 885 P.2d 138, 141 (App.1994). Like *Nieuwenhuis, Burton*'s holding that a violation must precede modification is simply wrong. Indeed, we recently denied review in a case in which the author of *Nieuwenhuis* acknowledged its error. *State v. Gutierrez,* CR–96–0138–PR (Rev. denied June 19, 1996).

Relying on *Green* and *Nieuwenhuis* alone, the court says, "[b]ecause Arizona cases interpreting the Fourteenth Amendment hold that modifications require notice and a hearing, and because an extension is a modification, it follows that an extension requires notice to the probationer that his term will be extended. We therefore decline to follow the federal cases which have reached a different result." *Ante,* at 193–194, 920 P.2d at 315–16. But as we have seen, the two Arizona cases upon which the court relies do not even address the issue. We have never held that *Gagnon* applies to probation modification or extension. Every federal court that has de-

**198**

cided the issue has concluded that it does not.

The court locks its erroneous federal conclusion into the concrete of state constitutional law by holding that state due process also requires notice and an opportunity to be heard before probation extension. The court expressly immunizes its holding from further federal judicial review by citing *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). But neither *Green* nor *Nieuwenhuis* had anything to do with the state constitution.

### IV.

According a probationer notice and an opportunity to be heard before the period of probation is extended to accommodate restitution is a good idea, one which our statute and rule embrace. We even ought to consider extending it to probation periods generally, by statute or rule amendment, as has the United States. See 18 U.S.C. § 3564(d) and Rule 32.1(b), Fed.R.Crim.P. But this is not the case to find such an idea in the federal and state constitutions.